UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

VICTORIA WRIGHT,

        Plaintiff,

  v.

DAVID RUNNELS, Warden,
CALIFORNIA STATE PRISON -
SUSANVILLE; MICHAEL ROCHE,
M.D.; and DOES 1 to 10,
inclusive,

        Defendants.

No. 2:05-cv-02530-MCE-EFB

MEMORANDUM AND ORDER

----oo0oo----

Plaintiff Victoria Wright ("Plaintiff") seeks damages in this action as a result of the August 23, 2005 death of her husband, Jay Wright, while incarcerated at High Desert State Prison ("HDSP") in Susanville, California. Defendants David Runnels and Michael Roche, M.D., the Warden and Chief Medical Officer, respectively, of HDSP, now move for summary judgment.

///
///
///

1

Plaintiff's complaint alleges a single claim for violation of civil rights cognizable under 42 U.S.C. § 1983, premised on Mr. Wright's right to be free of cruel and unusual punishment (deliberate indifference) under the Eighth Amendment to the United States Constitution, as well as his Fourteenth Amendment right to due process.  Plaintiff brings this claim under California's survival statute, California Code of Civil Procedure section 377.30.  For the reasons set forth below, that Motion is denied.

**BACKGROUND**

While serving an eighteen-month sentence for worker's compensation and tax fraud,[1] Jay Wright, age 53, was transferred on August 15, 2005 from San Quentin State Prison to the High Desert State Prison in Susanville.  Mr. Wright suffered from a chronic heart condition, atypical angina, and had been taking a calcium channel blocker (either Norvasc or Procardia) along with low dosage aspirin to treat that condition since his first heart attack in 1992 at the age of 39.  In 1999, after a second heart attack resulting from blockage to Wright's right coronary artery, a stent was surgically placed to alleviate the blockage.  As a result of his atypical angina, however, Wright remained on calcium channel blockers to prevent spasm of the coronary arteries which could cause another heart attack.

---

[1] Defendants have requested judicial notice, pursuant to Federal Rule of Evidence 201, of the Abstract of Judgment memorializing the conviction that resulted in Mr. Wright's incarceration.  That request is unopposed and is granted.

The aspirin, in conjunction, served to alleviate any clot formation should spasm occur.  Plaintiff apparently took both medications on a daily basis.

Although Wright had received both Procardia and aspirin while housed at San Quentin, Plaintiff alleges he received no heart medication whatsoever after being transferred to Susanville despite the fact it was critical he not miss a single dose. Although a prescription for Procardia, was eventually filled on August 22, 2005, a week after his transfer to Susanville, Plaintiff claims that no medication was actually administered to her husband before he died the next day as a result of acute thrombosis (heart attack) of his right coronary artery.

Mr. Wright's medical records at HDSP indicate that the medications prescribed at San Quentin were detained with his personal belongings.  Although the reception nurse noted upon Wright's arrival that he was taking Procardia and aspirin, those prescriptions were not filled.  Even after Wright submitted a Health Care Services Request Form indicating that he needed his "heart meds (Procardia)" on August 17, 2005, two days after arriving at the HDSP, no refill was placed until five days later and not received by Wright prior to his death.

Defendant Roche became the Chief Medical Officer at HDSP in January of 2005.  As CMO, Roche was ultimately responsible for the supervision of medical staff, including the pharmacy.  Roche did not generally see patients, however, and did not see Mr. Wright during his seven-day tenure at HDSP.  He did not directly supervise the nurses who evaluated and examined Mr. Wright before his death.

3

With respect to the other named defendant, Warden David Runnels, Mr. Runnels was responsible for the custody and security of inmates at HDSP and did not have any role in hiring, training, or supervising the prison's medical staff.  Like Dr. Roche, Mr. Runnels had no personal knowledge of Mr. Wright until after he died.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. at 323 (quoting Rule 56(c)).

4

1    If the moving party meets its initial responsibility, the
2 burden then shifts to the opposing party to establish that a
3 genuine issue as to any material fact actually does exist.
4 <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
5 585-87 (1986); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S.
6 253, 288-89 (1968).

7    In attempting to establish the existence of this factual
8 dispute, the opposing party must tender evidence of specific
9 facts in the form of affidavits, and/or admissible discovery
10 material, in support of its contention that the dispute exists.
11 Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that
12 the fact in contention is material, i.e., a fact that might
13 affect the outcome of the suit under the governing law, and that
14 the dispute is genuine, i.e., the evidence is such that a
15 reasonable jury could return a verdict for the nonmoving party.
16 <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 251-52
17 (1986); <u>Owens v. Local No. 169, Assoc. of W. Pulp and Paper</u>
18 <u>Workers</u>, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way,
19 "before the evidence is left to the jury, there is a preliminary
20 question for the judge, not whether there is literally no
21 evidence, but whether there is any upon which a jury could
22 properly proceed to find a verdict for the party producing it,
23 upon whom the onus of proof is imposed."  <u>Anderson</u>, 477 U.S. at
24 251 (quoting <u>Improvement Co. v. Munson</u>, 14 Wall. 442, 448, 20
25 L.Ed. 867 (1872)).
26 ///
27 ///
28 ///

As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

**A. Deliberate Indifference**

While medical care of pretrial detainees is analyzed under the due process clause of the Fourteenth Amendment, convicted prisoner claims for allegedly constitutionally inadequate medical care are governed by the Eighth Amendment. City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 243-44 (1983).

///
///

6

Therefore, although Plaintiff has also pled a Fourteenth Amendment claim, Plaintiff's claim that Defendants were deliberately indifferent to her husband's medical needs must be analyzed under the Eighth Amendment's proscription against cruel and unusual punishment. Id.[2]

Plaintiff faces a substantial threshold in establishing that Defendants herein had the requisite deliberate indifference. A prison official acts with such indifference only if he knows of and disregards an excessive risk to inmate health and safety. Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002). Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991). Instead, officials must be subjectively aware of a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Either inaction or action in the face of such knowledge, however, is enough to support liability. Id. at 842.

///
///
///

---

[2] While Plaintiff's complaint appears to invoke the protections afforded by the Fifth and Ninth Amendments as well, neither are applicable under the circumstances of this case. As Defendants point out, the due process clause contained within the Fifth Amendment, and the equal protection component thereof, applies only to the actions of federal officials, not state actors like Defendants herein. Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001), citing Schweiker v. Wilson, 450 U.S. 221, 227 (1981). Additionally, the Ninth Amendment has never been recognized as independently supporting a constitutional right in a civil rights action. Standberg v. City of Helena, 791 F.2d 744, 748 (9th Cir. 1986). Plaintiff does not oppose Defendants' position in that regard.

7

Significantly, whether or not a prison official has the required knowledge "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. Id. (internal citations omitted).

   The propriety of summary judgment in this case boils down to whether either Defendant Roche or Defendant Runnels were deliberately indifferent to Jay Wright's serious medical needs. That Wright's medical needs were indeed serious can hardly be questioned; he died of a heart attack involving the same right coronary artery that had previously been symptomatic just days after not receiving longstanding medications to control the atypical angina that affected the artery and caused it to be subject to spasm.  Indeed, Plaintiff's medical expert, Robert Chesney, M.D., specifically attributes his death to the fact that Plaintiff had not obtained the needed calcium channel blocker and aspirin after his arrival at the HDSP.  (Chesney Decl., ¶¶ 5-6, Ex. "D" to Decl. of Jeff R. Vincent in Support of Defs.' Mot.). Defendants themselves concede (at least "ideally") that Wright should have received both Procardia and aspirin each day he was at the HDSP.  (Opening Mem. of Points and Authorities, 13:9-10).

   We next turn to whether either Dr. Roche or Warden Runnels had awareness of Plaintiff's needs sufficient for purposes of imposing liability.  As indicated above, the Supreme Court's decision in Farmer indicates that the required knowledge can be inferred from circumstantial evidence, including the very fact that the risk at issue was obvious.

8

Farmer v. Brennan, 511 U.S. at 842.  Defendants are correct, however, in asserting that their liability in this regard cannot be on a respondeat superior basis and instead must derive from their own personal action or inaction.  An individual's general responsibility for supervising the operations of a prison is insufficient to establish the needed personal involvement.  See Wesley v. Davis, 333 F. Supp. 2d 888, 892 (C.D. Cal. 2004).  A prison official can, however, be
liable for his own culpable action or inaction in the training, supervision or control of subordinates, if that action evinces a reckless or callous indifference to the rights of others.  See Menotti v. City of Seattle, 409 F.3d 1113, 1149 (9th Cir. 2005).  Deliberate indifference can be inferred through an established practice or custom that violates a prisoner's rights.  Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003).  Liability can exist where a supervisory official implements a policy or practice so deficient that the policy "itself is a repudiation of constitutional rights."  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); see also Gibson v. County of Washoe, 290 F.3d 1175, 1187-88 (9th Cir. 2002).

    Plaintiff has raised circumstantial evidence from which it can be inferred that Dr. Roche knew that medical staffing at HDSP posed a substantial risk of harm to incoming inmates, including Mr. Wright.  According to deposition testimony cited by Plaintiff, Dr. Roche knew that the prison's Receiving and Release Department, which processed Jay Wright upon his arrival at HDSP, had to process as many as several hundred inmates a week.  Id. at 16:20-25; 17:1-8.

9

According to Roche, the Receiving and Release nursing staff was "chronically short-staffed". Id. at 20:3-21:22. Roche further knew that it could take several days for an inmate to have an intake evaluation performed, and he was unaware of how an inmate would get necessary medication in the event of such a delay. Id. at 23:21-24:13.

Defendant Roche's lack of knowledge concerning critical procedures was echoed by other medical staff. The nurse who initially saw Jay Wright at arrival, M. Marlow, noted that Mr. Wright did not have his heart medications but thought that the first watch nurse, who completed the processing of Wright's reception after Marlow's shift ended, would finish processing his reception documents and would order medication to be provided the next day. (Marlow Decl., ¶ 4)  That expectation failed to materialize, even though Nurse Marlow released Mr. Wright into general custody. Indeed, it was only after three full days had passed, and at Mr. Wright's own behest, that the issue was revisited by a triage nurse. Even after again being prompted, staffing shortages and/or deficiencies prevented the prescriptions recommended by that nurse (V. Unterreiner) from being filled until four days later, on August 22, 2005, and the medications were never delivered prior to Plaintiff's death the next day, after he had been lacking necessary heart medication for over a week.

///
///
///
///

Plaintiff also cites deposition testimony from Dr. Roche which suggests that he was well aware of problems with filling prescriptions, ranging from insufficient pharmacy staffing, inadequate pharmacy software, after hours and weekend closure of the pharmacy due to lack of resources, and ill-defined practices for filling prescriptions when the pharmacy was closed, ranging from obtaining medications through a secure vending service ("Documed") to emergency visits to local retail establishments during off hours. Roche Dep., 36:16-25; 37:1-16; 38:10-25; 39:2-24.[3] Plaintiff argues that it was deliberately indifferent to allow these practices to continue despite the high risk of serious injury or death if inmates fail to timely receive critical medications.

While Dr. Roche claims that he "constantly" tried to obtain more pharmacy staff and was rebuffed for his efforts in doing so by receiving a "poor" response, and although he intimates that a similar lack of resources also accounted for the failure to replace archaic pharmacy software that failed to adequately track inmate orders, a lack of funds for facilities cannot justify an unconstitutional lack of competent medical care and treatment for inmates.

///

---

[3] Even if these alternative procedures for filling medications were available in Mr. Wright's case, there is no evidence that they were used. Nurse Unterreiner, who saw Jay Wright on August 20, 2005 and asked that he receive a supply of both Procardia and aspirin, confirms in her declaration that there is no indication in Wright's file that the prescription was transmitted for filling by Documed, even though the jail pharmacy would have been closed at the time she made the prescription request. Unterreiner Decl., ¶¶ 3-4. Nor is there any indication that other twenty-four hour community facilities were utilized.

11

See <u>Ancata v. Prison Health Servs., Inc.</u>, 769 F.2d 700, 704-05 (11th Cir. 1985), citing <u>Gates v. Collier</u>, 501 F.2d 1291 (5th Cir. 1974).[4]

All these issues raise factual determinations with respect to the level of Dr. Roche's knowledge, and whether that knowledge amounted to deliberate indifference, which are not amenable to determination on summary judgment.  As indicated above, whether or not a prison official has sufficient knowledge of a substantial risk demonstrating such indifference is a question of fact that should be assessed by the finder of fact upon examination of all the evidence, including inference from circumstantial evidence.  <u>Farmer v. Brennan</u>, <u>supra</u>, 511 U.S. at 842.  That multi-leveled factual analysis cannot be made within the confines of this motion.  Plaintiff has presented enough information to survive summary judgment.

If the trier of fact ultimately determines based on the above described factors that Dr. Roche was aware of a substantial, longstanding, pervasive or well-documented risk to inmates, that may be sufficient to permit a trier of fact to find that he had actual knowledge of the risk for purposes of showing deliberate indifference.

///

///

---

[4] While the Court recognizes that a recent Northern District decision, <u>Clouthier v. County of Contra Costa</u>, 2007 WL 2422595 (N.D. Cal. 2007), appears to require that allegations of understaffing cannot constitute deliberate indifference for purposes of defeating summary judgment in the absence of expert opinion, this Court is not obliged to follow Clouthier and declines to do so.

12

Whether or not policies were employed to insure that prisoners received vital medications, and whether that lack amounts to deliberate indifference given Dr. Roche's knowledge of the situation, is a question of fact.  Roche cannot say, as he must to establish entitlement to summary judgment, that no circumstantial evidence has been presented which could permit a trier or fact to find knowledge of a substantial risk of harm sufficient for finding deliberate indifference.  See Lolli v. County of Orange, supra, 351 F.3d at 421.

With respect to Defendant Runnels, however, there is no evidence that he had any responsibility for either caring for Mr. Wright or intervening to ensure that proper care was in fact received.  As Warden, he was not entrusted with ensuring that inmates received their medications.  That responsibility rested with Defendant Roche as the prison's Medical Director.  Runnels was not a medical doctor and has no ability to hire, fire, or determine the appropriate level of staffing in the medical department.  Defs.' UF No. 33-34.   In the absence of such responsibility, and in the absence of any personal knowledge on Defendant Runnel's part concerning Plaintiff's condition, Runnels could not have been deliberately indifferent.  While Plaintiff charges that Runnels was charged with ensuring that prescribed medications were in fact dispensed to inmates, there is no evidence that any deficiencies in the dispensing process actually amounted to deliberate indifference.

///
///
///

**B.  Qualified Immunity**

Defendant Roche asserts that even if liability is otherwise established, he still is entitled to qualified immunity because his actions in supervising the medical care provided at HDSP were reasonable.

Roche is correct in asserting that qualified immunity shields public officials from liability for civil damages so long as their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity hence "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Assessing the validity of a qualified immunity defense entails a two-step inquiry.  First, the court must determine the threshold issue of whether, taken in the light most favorable to the party asserting the injury, the facts show the violation of a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If such violation is established, the court must next address whether the particular right in question is clearly established. Id. While the Plaintiff bears the burden of proving the existence of a clearly established right at the time of the allegedly impermissible conduct (LSO, Ltd. v. Stroh, 205 F.3d 1146, 1157 (9th Cir. 2000)), if that burden is met the burden switches to Defendant to demonstrate that their actions were reasonable even in the face of potentially violating a clearly established constitutional right.

14

<u>Doe v. Petaluma City Sch. Dist.</u>, 54 F.3d 1447, 1450 (9th Cir. 1995).

Here there can be little argument that Plaintiff's allegations, taken in the light most favorable to her claim, show that Plaintiff failed to receive necessary medical care given HDSP's failure to prescribe essential heart medications that he had been taking for many years. It is equally plain that a prisoner has the right to receive adequate medical care while incarcerated. Moreover, Defendant concedes that a prisoner's right to receive such care is clearly established. (Opening Mem. of Points and Authorities, 15:15-17).

Hence the only real issue with respect to the availability of qualified immunity is whether Defendant Roche has established that he acted reasonably. That question may be resolved on summary judgment, as Roche seeks here, if the essential facts are undisputed, or if no reasonable juror could conclude that Roche's actions were anything but reasonable. See <u>Sinaloa Lake Owners Ass'n v. City of Simi Valley</u>, 70 F.3d 1095, 1100 (9th Cir. 1995).

Defendant has not made that showing. Under the circumstances, a reasonable juror could conclude that Roche acted unreasonably in failing to develop procedures adequate to ensure that Mr. Wright received his essential medications. As such, he is not entitled to qualified immunity upon summary judgment.

///
///
///
///
///

**C.   Eleventh Amendment Immunity**

While § 1983 does provide a method by which individuals can sue for violations of their civil rights, one of the prerequisites for imposition of § 1983 liability is that the claimed violations are committed by a "person" acting under color of state law. Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989). Significantly, under the sovereign immunity generally afforded to states by the Eleventh Amendment, a state and its officials sued in their official capacity do not qualify as "persons" within the meaning of § 1983, and consequently neither are subject to suit under the statute. Id. at 70-71; Cortez v. County of Los Angeles, 294 F.3d 1186, 1188 (9th Cir. 2001). Will explains the extension of Eleventh Amendment immunity to state officials as follows: "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office." Id. at 71. Hence a suit against an individual in his official capacity is no different than suit against the state itself, and immunity applies.

While Defendant Roche is correct in asserting that Eleventh Amendment immunity also applies to bar Plaintiff's claims against him in his official capacity, he fails to mention that Plaintiff's Section 1983 claim is pled against in both his individual and official capacities. He does not even argue that the immunity afforded by the Eleventh Amendment applies to claims against him personally and therefore, summary judgment on that ground cannot be had.

16

**CONCLUSION**

For all the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED as to Defendant Roche, but GRANTED as to Defendant Runnels.[5]

IT IS SO ORDERED.

Dated: March 6, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[5] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Local Rule 78-230(h).

17